**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

DANIEL S. K.,[1]

                Plaintiff,

       v.                                                                    **DECISION AND ORDER**
                                                                              20-CV-995-A
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      Plaintiff Daniel S. K. ("Plaintiff"), brings this action seeking review of the

Commissioner of Social Security's final decision that denied Plaintiff's application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"),

and Supplemental Security Income ("SSI") under Title XVI of the SSA.  The Court

has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  The

parties have filed cross-motions for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 12, 14), and Plaintiff filed a

reply (Dkt. No. 16).

      The Court assumes the parties' familiarity with the administrative record, the

parties' arguments, and the standard of review, to which the Court refers only as

necessary to explain its decision.  _See Schaal v. Apfel_, 134 F.3d 496, 500-501 (2d

Cir. 1998) (summarizing the standard of review and the five-step sequential

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order
will identify the plaintiff using only his first name and middle and last initials, in accordance with this
Court's Standing Order issued November 18, 2020.

evaluation process that Administrative Law Judges [ALJs] are required to use in

making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.

2008) (same).  For the reasons that follow, Plaintiff's motion is GRANTED, the

Commissioner's cross-motion is DENIED, and this matter is REMANDED for further

administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

On May 27, 2017, at the age of 28, Plaintiff was the driver in a motor vehicle

accident at a racetrack and sustained injuries, to include multiple fractures.  T. 22,

363, 368-369, 370-373, 921.[2]  After admission to an Emergency Department and

undergoing CT scans and x-rays, Plaintiff underwent surgery the day following the

accident to repair his left tibia and fibula,[3] which were fractured.  T. 365, 432-433.

Plaintiff applied for DIB and SSI in June 2017, alleging disability beginning on

May 27, 2017, due to ADHD, broken leg, fractured face, fractured sternum, skull

fracture, hearing loss, short-term memory loss, concussion, whiplash, broken nose,

and broken jaw.  T. 15, 187, 194, 216, 219-220.  His applications were initially

denied on October 10, 2017.  T. 83-84, 119.  After filing a request for a hearing, T.

129-130, Plaintiff appeared with his attorney and testified at a hearing on August 20,

2019, along with a vocational expert who also testified, *see* T. 37-61.  At the hearing,

Plaintiff requested a closed period of disability from May 27, 2017 until January 22,

---

[2] "T. __" refers to pages of the administrative transcript at Dkt. No. 10.

[3] The tibia is "[t]he medial and larger of the two bones of the leg, articulating with the femur, fibula, and talus," in other words, your "large shinbone."  Stedman's Medical Dictionary 1989 (28th ed. 2006).  The fibula is "[t]he lateral and smaller of the two bones of the leg; does not bear weight and articulates with the tibia above and the tibia and talus below," in other words, the "calf bone."  Stedman's Medical Dictionary 727 (28th ed. 2006).

2019 (a period of almost 20 months); the latter date was when Plaintiff returned to

work full-time.  T. 15, 41.  Following the hearing, the ALJ issued an unfavorable

decision on September 6, 2019, finding Plaintiff not disabled within the meaning of

the SSA.  T. 12-30.  Plaintiff thereafter requested review by the Appeals Council, but

his request was denied in June 2020.  T. 1.  This action seeks review of the

Commissioner's final decision.  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151

(2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. §

405(g).  "'Substantial evidence' is 'more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971).

## RFC finding

Plaintiff takes issue solely with the ALJ's Residual Functional Capacity

("RFC") finding.  First, he argues that the ALJ's RFC finding is unsupported by

substantial evidence because despite finding the report of psychological consultative

examiner Janine Ippolito, Psy.D. ("Dr. Ippolito") "persuasive," the ALJ failed to

adequately explain why certain limitations from her opinion were not incorporated

into the mental RFC.  By way of a footnote, Plaintiff argues that the ALJ made the

3

same error regarding the opinion of state agency psychological consultant Dr. K. Lieber-Diaz ("Dr. Lieber-Diaz"), which included similar limitations as those opined to by Dr. Ippolito.  Second, he argues that the ALJ improperly found "persuasive" and improperly relied upon the non-examining opinion of state agency medical consultant J. Meyer, M.D. ("Dr. Meyer"), in formulating the physical RFC.

At Step 2, the ALJ found that Plaintiff has severe impairments of attention deficit hyperactivity disorder (ADHD), major depressive disorder, adjustment disorder, posttraumatic stress disorder (PTSD), neurocognitive disorder, degenerative joint disease and degenerative disc disease of the lumbar spine, chronic pain syndrome, morbid obesity, and status post-repair of left tibia-fibula fracture.  T. 18.[4]  The ALJ also found that Plaintiff has non-severe impairments of fractured face, fractured sternum, skull fracture, whiplash, broken nose, broken jaw, and hearing loss.  T. 18.

Between Steps 3 and 4, the ALJ determined that Plaintiff has the RFC to perform light work, with the following limitations:  (1) can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; (2) can occasionally balance, stoop, kneel, crouch, and crawl; (3) can never work at unprotected heights; (4) can never work around moving mechanical parts; (5) can never operate a motor vehicle; (6) can occasionally work in vibration; (7) able to perform simple, routine, and repetitive tasks; (8) able to make simple work-related decisions; (9) can occasionally interact

---

[4] The severe impairment of "status post-repair of left tibia-fibula fracture" was referring to Plaintiff's recovery from his fracture-repair surgery.  *See* T. 19.

with supervisors and coworkers; and (10) can never interact with the public.  T. 20-
21.

***Psychological Consultative Examiner's Opinion***

Plaintiff seeks remand of this matter on the basis that the ALJ neither
incorporated certain limitations opined to by Dr. Ippolito in the mental RFC nor
provided an explanation for why he did not include those limitations in the mental
RFC.  In response, the Commissioner argues that "mild-to-moderate symptoms are
generally compatible with the ability to perform some work."  Thus, according to the
Commissioner, the ALJ did account for Plaintiff's moderate limitations in the RFC
finding.

Dr. Ippolito performed a psychiatric evaluation of Plaintiff on August 31, 2017.
T. 827-831.  Dr. Ippolito noted that upon examination, Plaintiff's mode of dress was
"somewhat disheveled."  T. 828.  His affect was "[r]estricted," and he reported
feeling "dysthymic and irritable" that day.  T. 829.[5]  Plaintiff's attention and
concentration were "impaired due to suspected limited intellectual functioning."  T.
829.  While he was able to do counting and a one-step calculation without any
errors, he had difficulty with two-step calculation and serial subtraction tasks.  T.
829.  His recent and remote memory skills were also "impaired due to limited
intellectual functioning"—he was able to recall three out of three objects immediately
and three out of three objects after a delay but stated five numbers forward and two

---

[5] Dysthymia is "[a] chronic mood disorder manifested as depression for most of the day, more days than
not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or
hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and
feelings of hopelessness."  Stedman's Medical Dictionary 602 (28th ed. 2006).

numbers backward.  T. 829.  Plaintiff's intellectual functioning was estimated as

"below average to borderline," which was based at least in part on Dr. Ippolito's

review of Plaintiff's educational records.  T. 829.

Dr. Ippolito diagnosed Plaintiff with unspecified anxiety disorder with panic

attacks, persistent depressive disorder, and "[r]ule out" specific learning disorder.  T.

830.  "In the medical context, a 'rule-out' diagnosis means there is evidence that the

criteria for a diagnosis may be met, but more information is needed in order to rule it

out."  *Joshua T. v. Comm'r of Soc. Sec.*, 19-CV-1355S, 2021 WL 1099614, 2021

U.S. Dist. LEXIS 54538, *12 (W.D.N.Y. Mar. 23, 2021) (internal quotation marks and

citations omitted).  Plaintiff's expected duration of impairment and timeframe for

suggested therapy was about one year, and his prognosis was "fair to guarded"

because of his "suspected cognitive deficits."  T. 831.

Based on her examination of Plaintiff, Dr. Ippolito opined that Plaintiff had

moderate limitations in ability to understand, remember, or apply complex directions

and instructions; ability to sustain concentration and perform a task at a consistent

pace; sustain an ordinary routine and regular attendance at work; and regulate

emotions, control behavior, and maintain well-being.  T. 830.  According to Dr.

Ippolito, these results were all consistent with psychiatric problems but in

themselves did not appear to be significant enough to interfere with Plaintiff's ability

to function on a daily basis.  T. 830.

Dr. Lieber-Diaz's opinion was rendered on September 15, 2017.  This non-

examining consultant concluded that based on the records he or she reviewed,

Plaintiff "would be capable of unskilled work on a sustained basis."  T. 93.  As to his

mental RFC, like Dr. Ippolito, Dr. Lieber-Diaz found moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  T. 97-99.

According to Plaintiff, notably absent from the mental RFC are the moderate limitations opined to by both Drs. Ippolito and Lieber-Diaz, and although ALJ purported to find those medical opinions persuasive he then deviated from them without a proper explanation.

In his decision, the ALJ found Dr. Ippolito's opinion to be "persuasive" because it was generally supported by and consistent with her examination findings and the findings from The Resource Center (Plaintiff's therapist) and Chautauqua Medical Associates (Plaintiff's primary care physician), as well as the opinion of state agency psychological consultant Dr. Lieber-Diaz.  T. 27.  The ALJ then explained, "[h]owever, I find that [Plaintiff] has moderate limitations in interacting with others to better account for his difficulties with attention and any residual pain."  T. 27.  The ALJ used the same exact explanation in finding Dr. Lieber-Diaz's opinion "persuasive."  T. 27.

"In resolving evidence, an ALJ is entitled to accept parts of a doctor's opinion and reject others . . . However, an ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified without providing some reasonable explanation."  *Matthews v. Comm'r of Soc. Sec.*, 1:17-cv-00371-

MAT, 2018 WL 4356495, 2018 U.S. Dist. LEXIS 156281, *7 (W.D.N.Y. Sept. 13, 2018) (internal citations omitted).

Plaintiff is correct that the ALJ did not explicitly mention the moderate limitations in his RFC finding.  The Court concludes that based on Second Circuit case law and the ALJ's decision here, remand is required for explanation by the ALJ—but not as to all the moderate limitations at issue.

"It is well-settled that moderate difficulties in social interaction, attention, concentration, and working at a consistent pace, are sufficiently accounted-for by limitations to unskilled, routine or repetitive work with no more than occasional social interactions."  *Denise P. v. Kijakazi*, 20-CV-0468L, 2021 WL 3513836, 2021 U.S. Dist. LEXIS 150209, *6 (W.D.N.Y. Aug. 10, 2021) (collecting cases); *see Hintsa N. v. Comm'r of Soc. Sec.*, Case # 20-CV-6335-FPG, 2021 WL 3615704, 2021 U.S. Dist. LEXIS 154104, *5 (W.D.N.Y. Aug. 16, 2021) ("The ALJ properly accounted for Plaintiff's moderate limitations in sustaining concentration and performing tasks at consistent pace . . . by limiting Plaintiff to simple, routine, repetitive tasks . . . as Courts in this District routinely conclude.") (internal quotation marks and citations omitted, collecting cases); *Arthur M. v. Saul*, 6:20-CV-06174-MJR, 2021 WL 2309884, 2021 U.S. Dist. LEXIS 106639, *11 (W.D.N.Y. June 7, 2021) (collecting cases) ("the ALJ's directive that plaintiff is limited to performing simple, routine tasks accommodates Dr. Ferrin's finding that plaintiff is moderately limited in concentration, persistence, and pace as well as in responding to changes in a work setting").

In this case, the ALJ's RFC finding limited Plaintiff to simple, routine, and repetitive tasks; making simple, work-related decisions; and only occasional interaction with supervisors and coworkers and no interaction with the public.  T. 21. In finding that Plaintiff could perform jobs existing in the national economy, the ALJ relied solely on three unskilled jobs identified by the vocational expert.  T. 29; *see* T. 58.  Moreover, unlike in *Matthews*, where "the ALJ failed to state in his opinion that these limitations were accounted for in the RFC finding" (*Matthews*, 2018 U.S. Dist. LEXIS 156281, at *9), here, in analyzing the opinions of Drs. Ippolito and Lieber-Diaz, the ALJ expressly stated that Plaintiff's difficulties with attention were accounted for in the RFC limitations regarding his interactions with others.  T. 27. Furthermore, peppered throughout the decision he repeatedly reasoned that despite Plaintiff's memory, concentration, and behavioral limitations Plaintiff "retained the capacity for simple[,] routine[,] repetitive tasks" with "limitations on interpersonal interactions."  *See* T. 23, 24, 25.

However, as aptly focused upon by Plaintiff (*see* Dkt. No. 12-1, pp. 18-20), the ALJ "made no mention whatsoever" of Plaintiff's moderate limitation of sustaining an ordinary routine and regular attendance at work, nor can the Court readily glean whether the ALJ meant to implicitly include all of the limitations identified by Drs. Ippolito and Lieber-Diaz in the mental RFC; thus, "[t]he ALJ's omission of these specific limitations in his discussion undercuts any conclusion that he meant for them to be accounted for therein."  *Matthews*, 2018 U.S. Dist. LEXIS 156281, at *9-10; *see Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) ("What is required is that the ALJ explain the bases for his findings with

9

sufficient specificity to permit meaningful review.").  The Court cannot conclude this was harmless error because the vocational expert testified that at a light exertional level, missing two workdays per month would preclude employment in the national economy.  T. 59-60.

The Court therefore rejects the Commissioner's argument, in part, that the RFC properly incorporated the assessed limitations.  *See, e.g.*, *Benique v. Kijakazi*, No. 20-CV-3243 (PAE) (OTW), 2021 WL 4894582, 2021 U.S. Dist. LEXIS 173707, *18 (S.D.N.Y. Sept. 10, 2021) (remanding for a "proper analysis" by the ALJ where the ALJ "failed to explain whether and how [the psychiatric consultative examiner]'s finding of moderate limitations in maintaining a regular schedule factored into the RFC decision or—if it was not—why that portion of [the psychiatric consultative examiner]'s opinion was not accepted"), *fully adopted by Benique v. Comm'r of the SSA*, 20 Civ. 3243 (PAE) (OTW), 2021 WL 4894612, 2021 U.S. Dist. LEXIS 184528 (S.D.N.Y. Sept. 27, 2021); *Edwards v. Comm'r of Soc. Sec.*, Case # 18-cv-6800-FPG, 2020 WL 6709528, 2020 U.S. Dist. LEXIS 213609, *7-8 (W.D.N.Y. Nov. 16, 2020) (holding that while the ALJ could "incorporate moderate limitations in attention and concentration into an RFC by limiting the claimant to simple, lowstress [sic], and non-production pace tasks," limitations to "low stress" jobs "do not account for moderate limitations in the ability to maintain a regular schedule," so remand was required on that basis).

On remand, the ALJ shall articulate whether Dr. Ippolito's moderate limitation of sustaining an ordinary routine and regular attendance at work (and relatedly, Dr. Lieber-Diaz's limitation of completing a normal workday and workweek without

interruptions from psychologically based symptoms), is consistent with his RFC findings.  If those opined limitations are rejected, the ALJ shall explain why, and cite to record evidence in support thereof to allow for meaningful review.

***State Agency Medical Consultant's Opinion***

Plaintiff also argues that the ALJ erred in primarily relying upon the opinion of the non-examining state agency medical consultant J. Meyer, M.D. ("Dr. Meyer") in formulating the physical RFC.

Preliminarily, "[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Peters v. Comm'r of Soc. Sec.*, CASE # 18-cv-00144, 2020 WL 772364, 2020 U.S. Dist. LEXIS 27257, *9 (W.D.N.Y. Feb. 18, 2020); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Dr. Meyer opined, among other things, that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, T. 95-96, which aligns with an RFC of light work.  The regulations define "light work" to include "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and to require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b); 416.967.  "The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time."  *Poupore v.*

*Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam); *see* Social Security Ruling

("SSR") 83-10, 1983 WL 31251 at * 5, 1983 SSR LEXIS 30.

The ALJ explained that he found Dr. Meyer's opinion persuasive because it

was "supported by and consistent with the objective examination findings from

Chautauqua Medical Associates as of December 2017, showing no need for any

assistive device, full strength and range of motion, and normal gait."  T. 26; *see* T.

22-23.

Plaintiff argues that Dr. Meyer's opinion was neither supported by evidence,

because Dr. Meyer did not personally examine Plaintiff, nor consistent with other

sources, because "the record overall supports greater limitations" than an RFC of

light work.[6]  This argument is without merit.  *See, e.g., Sarah H. v. Saul*, 6:20-CV-

6209-MJR, 2021 WL 2451528, 2021 U.S. Dist. LEXIS 113084, *13 (W.D.N.Y. June

16, 2021) ("Because substantial evidence supported [the state agency consultant]'s

opinion, the ALJ was entitled to credit the opinion even though [the state agency

consultant] did not personally examine plaintiff."); *Michaels v. Comm'r of Soc. Sec.*,

1:19-CV-0306 CJS, 2020 WL 5757185, 2020 U.S. Dist. LEXIS 178387, *23

(W.D.N.Y. Sept. 28, 2020) ("Plaintiff's primary objection to th[e] opinions [of two non-

examining state agency review physicians] is that neither was based on a personal

---

[6] Plaintiff's claims in this case were filed after March 27, 2017, which means the new regulations apply to
his claims.  "For claims filed on or after March 27, 2017, ALJs do not defer to, or give specific evidentiary
weight to, any medical opinions. 20 C.F.R. § 416.920c(a).  Instead, ALJs must evaluate medical opinions
according to the following factors: supportability, consistency, relationship with the claimant,
specialization, and other factors.  *Id.* § 416.920c(c)(1)-(5).  Supportability and consistency are the most
important factors.  *Id.*  § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is
supported by objective medical evidence and the medical source's supporting explanations, and
consistency is the extent to which an opinion is consistent with other medical or non-medical sources.  *Id.*
§ 416.920c(c)(1)-(2)."  *Tammy T. v. Kijakazi*, Case No. 5:21-cv-1, 2022 WL 71995, 2022 U.S. Dist. LEXIS
3751, *35 (D. Vt. Jan. 7, 2022).

examination of Plaintiff.  However, where, as here, such opinions are consistent with the record as a whole, an ALJ does not err by assigning them weight.").

The ALJ weighed evidence before him to determine that Plaintiff could physically do light work—including medical opinions, Plaintiff's hearing testimony, and treatment records and history of improvement—and the Court concludes that substantial evidence appropriately interpreted under applicable law supports the ALJ's conclusion as to Plaintiff's physical RFC.  For example, the ALJ noted that at his hearing, Plaintiff testified that six- or seven-months post-accident, he was walking without a cane or crutches, and driving again.  He also testified that he "[m]aybe" could have gone back to work six to seven months after the accident.  T. 21-22; *see* T. 47-48, 50-51.  The ALJ also considered the "longitudinal records" from Plaintiff's primary care physician and other providers as reflecting his post-surgery condition that "greatly improved" within a matter of six to seven months, supporting his conclusion that Plaintiff could not satisfy the SSA's 12-month durational requirement from the alleged onset date of May 27, 2017.  *See* T. 22-23, 26; *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 416.909; 404.1509.

Plaintiff's argument that the opinion of Dr. Meyer was "stale" likewise lacks merit.  "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. May 19, 2015).  However, "a medical opinion is not stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a

whole." *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 910 (W.D.N.Y. Aug. 27, 2018).

Plaintiff generally refers to records from Plaintiff's neurologist, Dr. Peterkin Lee-Kwen, along with later records from his primary care physician that post-date Dr. Meyer's October 10, 2017 opinion, in his assertion that Dr. Meyer's opinion was stale.  Specifically, he cites to a primary care note from January 2018 when Plaintiff reported "some random achiness, albeit having improved with duloxetine" and "occasional popping of his knee as well as cramping and pain on [sic] his hands."  T. 983-985.  He also refers to statements Plaintiff made at a September 2017 follow-up examination with Dr. Lee-Kwen, where he self-reported pain in his legs and difficulty walking short distances, as well as a physical examination on that date that revealed back tenderness, an antalgic gait, and difficulty with his lower extremities from his leg fracture.  T. 896.  Additionally, in November 2017, Plaintiff self-reported continued neck pain and episodes of his fingers and hands "locking up."  T. 999-1000.

The ALJ, however, evidently considered these records and reasoned that "within seven months of his accident and thereafter" (or, from December 2017 onward), Plaintiff showed noticeable improvement in his physical symptoms from his severe impairments, as he "consistently presented with intact gait, strength, and range of motion, with no significant neurological abnormalities or defects noted on repeat examination . . . [and] [a]lthough [he] periodically reported pain, limitations to light exertion with postural environmental restrictions account for [his] pain complaints as well as his morbid obesity."  T. 23; *see* T. 22 (specifically referencing

14

Plaintiff's January 2018 examination and his reports of symptoms, but also that the "examination was generally unremarkable").  Consequently, the Court finds Plaintiff's staleness argument unconvincing.

The Court also disagrees that the ALJ used the new regulations "as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner."  *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021).  The ALJ's analysis in rejecting or partly rejecting the opinions of three physicians referenced by Plaintiff (*see* Dkt. No. 12-1, p. 23; T. 25-27, citing T. 805, 823-826, 1003)—one who was not a treating physician but rather an internal medicine consultative examiner who performed one examination of Plaintiff—was not conclusory.  The ALJ found these opinions "only partially persuasive" or "unpersuasive" after reasoning that the suggested restrictions were either (1) rendered too early on in Plaintiff's recovery (*i.e.*, two to three months after the accident) to warrant RFC limitations, because subsequent treatment records showed improvement in Plaintiff's condition, or (2) inconsistent with the remainder of the record.

Last, Plaintiff suggests that the ALJ "could have" recontacted "some of the other providers" than Dr. Meyer for clarification of their opinions, such as Dr. Wayra Salazar Moreno—an opinion he argues was rejected partly because of the lack of explanation.  "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings; [w]here the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source."  *James B. v. Comm'r of Soc. Sec.*, 1:20-CV-

01075 EAW, 2021 WL 5988411, 2021 U.S. Dist. LEXIS 240552, *16 (W.D.N.Y. Dec. 16, 2021).  Here, the ALJ found that the portion of Dr. Salazar's opinion regarding Plaintiff's physical limitations, *i.e.*, permanent "decreased fine motor skills in bilateral hands," was unsupported by and inconsistent with any objective clinical findings, including those by the internal medicine consultative examiner that found Plaintiff's hand and finger dexterity were intact and his grip strength was 5/5 bilaterally.  T. 26; *compare* T. 826 *with* T. 1003.[7]  Plaintiff does not identify any treatment notes that would provide support for the limitations contained in Dr. Salazar's opinion.  He also fails to identify any missing records.  Indeed, at the hearing before the ALJ, Plaintiff's counsel stated the record was "up-to-date," *i.e.*, the ALJ had all the records before him to make a disability determination.  T. 40.

In sum, Plaintiff's arguments concerning the physical RFC amount to a request that this Court reweigh the evidence.  "In general, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . Plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record."  *Jonathan S. v. Comm'r of Soc. Sec.*, 1:20-CV-1177 (WBC), 2022 WL 44700, 2022 U.S. Dist. LEXIS 2162, *15 (W.D.N.Y. Jan. 5, 2022); *see Veino v. Barnhart*, 312 F.3d 578, (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the

---

[7] Dr. Salazar also opined that Plaintiff had permanent "memory impairment."  The ALJ found this opinion "unpersuasive" because Dr. Salazar did not explain how Plaintiff's memory impairment impacted Plaintiff's ability to perform work activities.

Commissioner to resolve.").  The Court concludes that Plaintiff has not made the proper showing.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. No. 12) for judgment on the pleadings is GRANTED, the Commissioner's cross-motion (Dkt. No. 14) for similar relief is DENIED, and the case is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order, namely, for the narrow purpose of reassessing Plaintiff's routine- and attendance-related limitations. On remand, the ALJ is directed to render a new decision to include analysis of these limitations, and to explain whether they are consistent with the mental RFC finding. If those opined limitations are rejected, the ALJ shall explain why, and cite to record evidence in support thereof to allow for meaningful review.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 12, 2022
        Buffalo, New York

17